# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| CAGER A. MALEEAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV418-096 |
| | ) | |
| OLATUNJI AWE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Cager A. Maleeah brings this 42 U.S.C. § 1983 action against Drs. Awe and Brown, PA Darcy, and Nurses Terry, Tyler, Green, and Anderson (née Evans). Doc. 1. The Court now screens his Complaint under 28 U.S.C. § 1915A.[1]

---

[1] Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, to establish procedures to govern civil complaints filed in federal court by prisoners and other detainees. Among the PLRA's procedures is the requirement for this Court to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official. *See* 28 U.S.C. § 1915A. The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. *Id*. Therefore, the Court examines plaintiff's Complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

I.  **BACKGROUND**[2]

Cager Maleeah is incarcerated at Coastal State Prison and contends that, beginning on May 22, 2016, his left foot hurt and was swollen. Doc. 1 at 5. After a few hours on work detail, his discomfort worsened, as his foot became inflamed, bright red, and painful "like it had been dipped in acid." *Id*. When taken to the medical unit around 3:00 a.m., Nurse Tyler told plaintiff he could not be seen until the following morning when a physician or physician's assistant would be present. *Id*. at 5-6. While he waited back in his cell, the pain worsened and his foot became splotchy with purple discolorations. *Id*. at 6. Nurse Tyler again sent him packing, informing Maleeah he could not "just come to medical without a call-out slip." *Id*. Nurse Green, however, examined his foot and told him it appeared to be a spider bite, but nothing could be done until a physician was present. *Id*.

Around 7:30 a.m. on the 23rd, Maleeah returned to medical unit to see a physician. After waiting for a few hours, P.A. Darcy examined him

---

[2] Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff, *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

and assessed his injury as "infected" "Athlete's foot." Doc. 1 at 7. She declined to refer Maleeah to Dr. Awe, and instead prescribed foot cream, antibiotics, and Motrin for the pain. *Id.* Plaintiff was unable to actually get those prescriptions, however, as they had only been "ordered." *Id.* at 7-8. By the next morning, his foot had begun leaking "this green nasty smelling fluid from between my toes that smelled like rotten meat." *Id.* at 8. Unable to get his prescribed medication, Maleeah returned to the nurse's station to ask to see Dr. Awe and was turned away by Nurse Terry after she determined he did not appear to be in "too much distress." *Id.* at 9. That evening, "pill call" on the 24th, Maleeah got his prescriptions for foot cream and antibiotics, but no Motrin since "none had been ordered." *Id.* at 10. As Maleeah returned to his cell, his pain was "off the charts" and he noticed "pink streaks coming up from my leg from my foot to about my knee" and "more and more fluid" leaking from his foot. *Id.* A few hours later, Nurse Green gave him some gauze and "cleanser in a green bottle" and left him to cleanse his own wound, while Nurse Terry again booted him from the nurses' station because he lacked a sick "call out" to be there. *Id.*

On the morning of the 25th, Maleeah again saw P.A. Darcy, was

3

given a shot (either of antiobiotics or for pain, it's unclear from the Complaint), and was sent back to his cell where he used a towel to catch the fluid leaking out of his foot.  The next morning, the 26th, P.A. Darcy gave him another two shots.  Doc. 1 at 11-12.  Plaintiff needed help to limp back to his dorm.  *Id.* at 12.  With pink streaks now "coming up past his belly button" and some shortness of breath, plaintiff decided the only way to get immediate, meaningful care was to complain of chest pains.  *Id.* at 12-13.  An officer called in a "code" to get the "prisoner E.R." "golf cart ambulance" dispatched, and after conferral, Nurse Jackson and P.A. Darcy called "EMS" to come fetch Maleeah from the prison.  *Id.* at 13.  Paramedics immediately assessed his foot as "really infected" and took him to the hospital, where medical staff set to work.  *Id.* at 13-15.

After examination, the vascular surgeon on duty explained that the infection had "penetrated some of the bones" in Maleeah's foot and that it might require amputation.  Doc. 1 at 15.  One of the physicians told him that the infection had spread through his body and was approaching his heart, and that it would be a close thing if the antibiotics could stop it.  *Id.* at 16.  Multiple bones and one toe were removed, and the extreme round of antibiotics and painkillers plaintiff was administered (his foot

4

left open to continue draining the infection) left him weak, nauseated, and unable to eat. *Id*. at 17-18 (reporting he lost 17 pounds over the course of the week following surgery). He was discharged back to the prison and provided ongoing care and physical therapy, but experiences ongoing nerve damage, balance problems and resultant injuries from falling, and pain, both physical and "phantom." *Id*. at 19-20. He's been told that he's reached maximum recovery, and that his current pain is most likely permanent. *Id*. at 20. He has been randomly denied medications by Nurse Anderson, without explanation, even after amputation. *Id*. Maleeah seeks injunctive and monetary relief for his pain and suffering and future medical care. *Id*. at 21.

## II.   ANALYSIS

Plaintiff advances a claim for denial of medical care in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (the Constitution imposes a duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."). "[N]ot every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotes and cite

5

omitted). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner must show that: (1) he had a serious medical need; (2) defendants were deliberately indifferent to that need; and (3) some injury was caused by defendants' indifference. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Maleeah has alleged sufficient facts to warrant service of the Complaint on defendants P.A. Darcy and Nurses Terry, Tyler, Green, and Anderson. While it is unclear what injury (if any) led to the catastrophic infection, that rapidly progressing infection was clearly a serious medical need[3] and defendants showed deliberate indifference to

---

[3]   Nurse Green theorized at one point that it could have been a spider bite; P.A. Darcy thought it was infected athlete's foot. Doc. 1 at 6 & 7. The standard for proving a "serious medical need" is quite exacting. The Court of Appeals defines it as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010). A brown recluse or black widow bite may rise to the level of a serious medical need (as either would result in necrotic tissue). *Dunham v. Adair*, 2006 WL 1936507 at *2 (N.D. Ga. July 11, 2006). As would a Staph infection. *See Lindley v. Birgmingham, City of Alabama*, 652 F. App'x 801, 805 (11th Cir. 2016). Athlete's foot wouldn't. *See Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3rd Cir. 2009); *Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1287 (M.D. Ala. 2005). However, the seriousness of the inflammation, putrid seepage, and pink track lines tracing their way to Maleeah's heart should have been an unambiguous sign of serious, life-threatening infection obvious to even the most incompetent medical professional. *Lindley*, 652 F. App'x at 805; *Davison v. Nicolou*, 2016 WL 6404034 at *4 (S.D. Ga. Oct. 27, 2016) ("the seriousness of the symptoms resulting from [the deceased's] bacterial infection, the vast majority of

that need.  Such a showing requires: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  *Youmans*, 626 F.3d at 564 (quote omitted and alteration adopted).  Here, the risk of ignoring the rapidly progressing infection was -- or should have been with even cursory examination -- obvious, and Coastal State Prison medical staff callously disregarded that risk.  *Lindley*, 652 F. App'x at 805-06.

A defendant may disregard a risk with more than gross negligence by, *inter alia*, intentionally failing or refusing to provide medical treatment, delaying treatment, providing grossly inadequate or inappropriate diagnosis or treatment, deciding to take an easier but less efficacious course of treatment, or providing medical treatment that is so cursory as to amount to no medical treatment at all.  *McElligott v. Foley*,

---

which physically manifested themselves to the naked and untrained eye, are so obvious that even a lay person would easily recognize the necessity for medical attention."); *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 227-28 (D.N.J. 2000) (life-threatening blood infection and resulting symptoms were obvious serious medical need).

Indeed, five days into the infection, Maleeah required surgery to remove necrotic tissue.  *Id*. (even if the medical diagnosis is unclear, the mere fact that he required surgical "removal of 'large amounts of necrotic fascia'" as well as "his affidavits [detailing the rapid progress of the infection] establish that he had a rapidly worsening infection whose severity should have been obvious to trained nurses."); *see* doc. 1-2 (photographs of foot post-surgery).  His medical situation was not fictitious or exaggerated.  It was real and very serious.

182 F.3d 1248, 1255 (11th Cir. 1999). While Nurse Green did take some steps to treat Maleeah's complaint and P.A. Darcy prescribed some medications, the Court cannot determine at this stage (at least, without further briefing more appropriate to summary judgment) that their care was sufficiently adequate, as to constitute mere "negligence" or "medical malpractice."

Being that within three days Maleeah lost a toe and several of his metatarsal bones basically liquefied, however, the P.A. and nurses' provision of foot cream, some gauze, and cleansing ointment before sending Maleeah back to his cell to literally rot suffices to meet the third (more than "gross negligence") prong of a deliberate indifference showing for screening purposes. *See Lindley*, 652 F. App'x at 805-06; *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference."); *see also Nimmons v. Aviles*, 409 F. App'x 295, 297 (11th Cir. 2011) ("For medical treatment to rise to the level of a constitutional violation, the care must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. [The plaintiff]

must demonstrate that [the defendants'] response to his medical need was more than merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.") (cites omitted). The inexplicable delay in administration of antibiotics, either by shot or prescription, too can support a finding of gross negligence. *Lindley*, 652 F. App'x at 805-06 (a delay in providing antibiotics which "allowed the infection to worsen to the point that antibiotics were no longer effective, leading to the extensive loss of tissue and skin" can establish deliberate indifference to a serious medical need); *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs."). Maleeah's claims against P.A. Darcy and the nurses is **GREENLIT** for service.

As to Drs. Awe and Brown, however, Maleeah has alleged no facts supporting a violation of his Eighth Amendment rights. *See* doc. 1. He says the nurses refused to let him see Dr. Awe, not that Dr. Awe refused to provide treatment or provided grossly negligent treatment. He says Dr. Brown later accompanied nursing staff on their rounds to ensure

proper treatment, not that Dr. Brown was ever involved in the care failures that led to the amputation of his toe and removal of necrotic tissue.  Neither physician is anywhere mentioned, in fact, as having any role whatsoever in the events forming the basis of his Complaint.  Both should therefore be **DISMISSED** from the Complaint.

### III.  CONCLUSION

Accordingly, Drs. Awe and Brown should be **DISMISSED**.[4] Maleeah's claims for the violation of the Eighth Amendment against PA Darcy and Nurses Terry, Tyler, Green, and Anderson, however, are approved for service and the Clerk is **DIRECTED** to forward a copy of this Order, along with plaintiff's Complaint, to the Marshal for service upon these defendants so that they may respond.

Meanwhile, it is time for plaintiff to pay his filing fee.  His PLRA paperwork reflects $139.58 in average monthly deposits.  Doc. 6.  He therefore owes a $27.91 initial partial filing fee.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  Plaintiff's custodian (or designee) shall

---

[4]  To the extent plaintiff believes he can resuscitate these claims, he remains free to submit an Amended Complaint if he believes that it would cure the legal and factual defects discussed above.  *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012).

remit the $27.91 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The Clerk is **DIRECTED** to send this Order and Report and Recommendation (R&R) to plaintiff's account custodian immediately.  In the event he is transferred to another institution, his present custodian shall forward a copy of this R&R and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this R&R.

This Order and R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file

objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __17th__ day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA