United States District Court
Southern District of Georgia
Savannah Division

Cager A. Maleeah          <
        Plaintiff         <
            vs.           <        Civil Action No.:
Dr. Brown, et al.,        <          4-18-cv-096
        Defendants        <

Plaintiffs Second Amended Complaint

Comes Now, Cager A. Maleeah, Plaintiff in the above styled and numbered case, pursuant to the Courts Order of June 24, 2019 (Doc. 70), and hereby submits his second Amended Complaint, adding Defendant Olatunji Awe and clarifying/correcting deficient pleadings in his Original Complaint and First Amended Complaint. To Wit:

1.

During the period of May 20, 2016 through June 1, 2019, Defendant Olatunji Awe (hereinafter "Defendant Awe") was the Senior Physician at Coastal State Prison (CSP). As Senior physician, Defendant Awe's duties and responsibilities include, but are not limited to: (i) supervising subordinate medical personnel employed by Georgia Medical College to administer healthcare services to CSP inmates; (ii) conducting physical examinations of CSP inmates and administering general and emergency healthcare treatment orders; and (iii) approving/revising recommended healthcare treatment plans proposed by other CSP physicians, physicians Assistants and/or nurses, or issuing a alternative treatment plan[s]. In cases of injuries conditions deemed

(1)

by said subordinate personnel to require specialized or emergency medical Treatment, Defendant Awe's duties/responsibilities included, but Not limited to;
(i.) conducting personal physical examinations to Assess the Actual medical condition of the pAtient; The nature and degree of emergency status;
 ii.) the adequacy/effectiveness of The recommended treatment plan and, if deemed necessary;
iii.) ordering/authorizing emergency TRANSPORT of the inMATE to the local Hospital For emergency specialized treatment.

2.

In its Order of JANUARY 15, 2019, (Doc. 31) the Court agreed with the MagistrATe Judge's conclusion that plaintiff Failed in his original Complaint to offer a basis by which Defendant Awe could be liable in this Action, StAting that plaintiff failed to allege any custom or policy implemented by Defendant Awe that may have caused plaintiffs injury, and that he had not alleged any facts to suggest that Defendant Awe directed the actions of the other Defendants in this case.

3.

Plaintiff did not in fact allege any facts to suggest that Defendant Awe directed the actions of the other Defendants in this action. He did not do so because he did not have any knowledge of Defendant Awe's personal direction of the other Defendants and could not show, or, in good conscious suggest, his culpability.

4.

In her May 30, 2019 Objections and Responses to plaintiffs FIRST INTerrogatories (Doc. 60-3), however, Defendant Hanna Dorce stAtes that
a.) On May 26, 2016, she notified Defendant Awe of plaintiffs symptoms and her care plan for the treatment Thereof;

(2)

b.) Defendant Awe directed her course of treatment.

c.) When she spoke to Defendant Awe on May 26, 2016, in her opinion plaintiff should be sent to the emergency room ("Sent-Out"), but Defendant Awe over-ruled and denied her recommendation sending inmate Maleeah, Plaintiff back to his cell.

d.) That she did not recall Defendant Awe even having conducted a personal examination of plaintiff prior to making the decision to deny her recommendation (Id. at Doc. 60-3 at p. 4); and

e.) That she knows she informed Defendant Awe in detail regarding her Course of Treatment, Plaintiffs subjective complaints, and her Objective observations of the foot condition: Claiming That "[a]ll material information in the medical records about [plaintiff] for May 25-26, 2016 was relayed to Dr. Awe." (Doc. 60-3, at p. 5).

## 5.

Plaintiff claims that Defendant Awe, with deliberate Indifference, Gross Negligence, and in Violation of State law, failed to exercise an affirmative duty to conduct a physical examination of plaintiff prior to directing/altering the Medical treatment of plaintiffs life-threatening infection, and that his actions/inactions were a proximate cause of actual and permanent injuries plaintiff Sets forth in The Original Complaint and incorporates herein by reference.

## 6.

In the original complaint, Plaintiff failed to allege any custom or policy implemented by Defendant Awe that may have caused plaintiffs injuries, or otherwise to allege any facts suggesting that Defendant Awe directed the actions of the other Defendants in this case. He did not do so because he did not have knowledge of Defendant Awe's personal direction of the other Defendants and could not show or, in good conscious suggest, his

Culpability.

7.

In her May 30, 2019 Objections and Responses to plaintiff's First Interrog-atories (Doc. 60-3), however, Defendant Hanna Dorce states that, when she spoke to him on May 26, 2016, she notified Defendant Awe of:

i.) plaintiff's Symptoms and care plan;

ii.) plaintiff's Subjective complaints;

iii.) her objective observations of the foot condition; and

iv.) all material information in the medical Records about plaintiff's condition for May 25-26, 2016.

She further states that:

i.) Defendant Awe directed her Course of treatment;

ii.) She recommended that, in her opinion, plaintiff should be sent to the Emergency Room;

iii.) but, Defendant Awe overruled her, sending plaintiff in-stead back to his cell.

iv.) That she does not recall Defendant Awe, even having an in-person encounter with plaintiff that day; and

v.) That she knows she informed Defendant Awe in detail regarding her course of treatment.

8.

Plaintiff claims that, because Defendant Awe not only failed with deliberate Indifference, gross Negligence, and in Violation of state law, to exercise an affirmative duty to conduct a physical ex-amination of plaintiff prior to directing any action in the Medical Treatment of plaintiff's life threatening infection — his actions in actions were the Proximate cause of injuries plaintiff sets

(4)

Forth in the original Complaint - adopted and incorporated as if set forth herein.

### 9.

Plaintiff claims that, because Defendant Awe not only failed with deliberate indifference, gross negligence, and in violation of State law, to exercise an affirmative duty - to personally conduct a physical examination of plaintiff prior to "Overruling" Defendant Dorce's recommendation to send plaintiff to the Emergency Room - his actions/inactions were the proximate cause of injuries plaintiff sets forth in the original Complaint - adopted and incorporated as if set forth herein.

### 10.

Plaintiff claims that Defendant Awe failed to exercise an affirmative duty. The failure to act caused plaintiff to suffer the deprivation of his Constitutional rights "Under Color of State law". He is sued in his official and individual capacities. Plaintiff further invokes his right to trial by Jury.

### 11.

Plaintiff alleges that these actions/inactions were the result of both overt activity and failures to act on the part of Defendant Awe. His failure to do what was required - conduct a personal examination prior to accepting or rejecting the recommendation(s) of his subordinate staff - as well as his overt activity - personally refusing plaintiff recommended Emergency hospital Care without conducting a personal examination - which was unlawful and harmful, was a substantial factor leading to the violation of plaintiffs Eighth Amendment Constitutionally protected liberty interest to be free from Cruel and unusual punishment.

(5)

12.

The Warden or Superintendant at each institution or facility
shall appoint a Grievance Coordinator. The Warden or Superintendant,
who has discretion in selecting this individual, shall appoint the
Grievance Coordinator. Where applicable, chief Counselors should
generally serve in this capacity. An Alternative Grievance Coor-
dinator shall be named to handle grievances filed against the
regular coordinator and to ensure the smooth functioning of the
process on days when the Grievance Coordinator is unavailable. A
list of Grievance Coordinators will be maintained in the central
office of the Georgia Department of Corrections. The institution
or facility must communicate any changes in writing to the
Corrections Division Director.

13.

The duties of the Grievance Coordinator and alternate Grievance
Coordinator are as follows:
* Properly apply and comply with the requirements of the procedure;
* Use informal attempts to resolve complaints and conflicts wherever
  possible;
* Accurately and properly maintain the inmate Grievance Management
  System Database;
* Ensure that all Necessary information, witness statements and
  documentation is obtained and considered.
* Ensure all records and documentation relevant to inmate griev-
  ances are retained as provided in this procedure; and
* Coordinate the timely investigation of grievances.

14.

Plaintiff claims that Defendant Rivers has been the chief Counselor
and designated Grievance Coordinator at CSPS since May 16, 2016.

(6)

15.

The offender must submit the grievance form no later than 10 days from the date the offender knew, or should have known, of the facts giving rise to the grievance.

16.

Prior to issuing a grievance form to an inmate, the counselor will note the inmate's name, GDC I.D. number, date issued, and by whom it was issued in the space provided on the top of the form. When the inmate submits the completed grievance the counselor receiving will note the date and their name in the space provided at the top of the grievance indicating who received it and when. The Counselor will then provide the required information in the receipt portion of the form, sign it, and give the inmate the copy of the receipt.

17.

As soon as practical, but no later than the following business day, the counselor will report to the grievance coordinator the information necessary to initiate the grievance in the Inmate Grievance Management System (IGMS) in order to assign a grievance number. When the necessary information is entered, the IGMS will assign the next sequential grievance number for that facility utilizing the three-digit institution code, the two-digit current calendar year, and a four digit grievance number. The assigned grievance number must be noted on the form in the space provided and on all documents, statements, and attachments associated with that grievance.

18.

"Retaliation against an offender for filing a grievance is strictly prohibited."

(7)

19.

The Grievance Coordinator will screen it in order to determine whether to accept it or to recommend that the Warden reject it.

20.

If the Grievance Coordinator determines that the Warden should reject the grievance, the Grievance Coordinator must make the recommendation to the Warden for the Wardens review and decision.

21.

However, even if the Warden rejects the grievance, staff must still act on the information contained in the grievance form in accordance with good prison management, if the information concerns the health or safety of any person.

22.

Plaintiff claims that Defendant Rivers, with deliberate intent to impede, obstruct, or otherwise defeat plaintiffs Constitutionally protected right to petition the courts for redress of grievances, stymied his attempts to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (PLRA), sending his grievances straight to the Circular File and rendering the inmate grievance procedure a sham.

23.

Plaintiff claims that Defendant Rivers violated his First Amendment Constitutional rights to petition the Court for redress of his grievances when:

i.) she attempted to create a procedural bar defense should plaintiff elect to pursue civil Remedies for injuries caused by CSP healthcare providers.

More Specifically, plaintiff claims that Defendant Rivers, with deliberate intent to cause plaintiff actual injury by

(8)

Creating a defensive argument that he failed to exhaust his administrative remedies in accordance with the PLRA, and therewith cause his civil action to be dismissed, failed to file and process his grievances in the hopes plaintiff would not object to same or otherwise pursue the matter; and ii.) She attempted to conceal Coastal State Prison (CSP) Healthcare providers' Medical Malfeasance from external DOC awareness/liability and oversight review, thus rendering the inmate grievance procedure a sham.

24.

Plaintiff claims that a custom, practice, and/or policy, employed for the purpose of defeating the inmate grievance process, has long existed at Coastal State Prison, and that Defendant Rivers has been an active party thereto, advancing said custom, practice, and/or policy, even before her promotion to chief Counselor. For example:

A.) On April 3, 2014, inmate Harry Clyde GDC# 1211352, submitted a Confidential offender Grievance Form to Defendant Rivers (whom as his case manager, or "Counselor") complaining of a custom, and/or policy practiced by CSP Heathcare providers that caused him to go without his physician prescribed Medications [Footnote #1] For periods ranging from 3 to 6 weeks - Thereby callously placing his health and wellbeing in jeopardy and causing unnecessary pain and suffering. Although Mr. Lyde periodically questioned Defendant Rivers regarding the status of his grievance, and subsequently submitted more grievances raising the same complaints, he has never received a Wardens/superintendent's response to any of them, and the same custom/policy is practiced by CSP Healthcare providers Today,

indicating that Defendant Rivers deliberately failed to act on
the information contained in the Grievance form, as mandated
DOC SOP, despite the fact that the information clearly
concerns the Health or Safety of Mr. Lyde.

B.) On March 20, 2018, July 23, 2018 inmate Donnie Stevenson,
GDC # 109692, submitted a Confidential offender grievance
form to his "Counselor" complaining of a custom, and/or policy
practiced by CSP Health Care providers that caused him to
go without his physician prescribed Diabetic insulin and
pain Medications (Neurontin and TRAmadol) for two (2)
weeks—thereby callously placing his health and well-being
in jeopardy and causing unnecessary pain and suffering.
Although Mr. Stevenson periodically questioned his counselor
regarding the status of his grievance, and subsequently sub-
mitted another grievance (on July 23, 2018), complaining of
another incident of CSP Healthcare providers causing him to go
without his physician prescribed medications for another week,
he did not receive a Warden/Superintendent's Response to either
of them by Sept 4, 2018, when he filed a direct Appeal to the
DOC Central office. As of the date of entry hereof, Mr. Stevenson
has not received a reply to the grievance's or his appeal, and the
same Custom/policy is practiced by CSP Health Care providers
Today, indicating that Defendant Rivers deliberately failed
to act on the information contained in the Grievance form, as
mandated DOC SOP, despite the fact that the information
clearly concerns the Health or Safety of Mr. Stevenson.

C.) On May 24, 2019, inmate Joel Green, GDC # 1001994582,
filed a Confidential Offender Grievance form complaining that

(10)

CSP Health Services Providers were deliberately indifferent and grossly negligent Toward his Serious medical needs relating to the Treatment of a known infection in his left foot. The gist of Mr. Green's Complaint was That Defendant Awe, with deliberate indifference, gross Negligence, and in violation of State Law, failed to exercise an affirmative duty — To conduct a physical examination of Mr. Green's life-Threatening infection prior to directing the course of Treating it, and that Defendant Awe's actions/inactions were the proximate cause of his suffering the actual and permanent injury of losing "another" Toe to infection. (It should be noted That Mr. Green had previously Suffered a similar infection and lost (2) Two Toes as the result of Defendants Awe's gross negligence and deliberate indifference supervision of the Treatment Thereof Although Mr. Green's grievance was filed Well before The infection progressed to The point requiring amputation of his Toe, Mr. Green states his Toe Literally fell off his body, Medical allowed it to get That bad. Mr. Green Still has not received a Warden/Superintendent's Response Thereto, or otherwise received any indication That his grievance was even filed, and The Same custom/policy is still practiced by CSP HealthCare Providers Today, indicating That Defendant Rivers deliberately failed to act on The information contained in The grievance form, as mandated DOC SOP, despite the fact That The information clearly concerns The Health or Safety of Mr. Green. The existing CSP Administrative Oversight practices, Customs, and/or policies once again provided Medical

(11)

health care providers at CSP the opportunity to deprive Mr.
Green proper medical care with impunity, Ultimately
Causing him to suffer the horrific injury to and maiming of
his foot Not once, but twice.

How many more inmates losing Toes/feet/ect, will it
Take before it gets stopped. How many more will die (2),
Two in just The last 3 years at CSP haved died from
infection. Their Names were introduced in plaintiff's earlier
complaint.

D.) On March 28, 2018, inmate Milton Ross, GDC# 471229, Filed a con-
fidential offender Grievance Form complaining that CSP Health
Services Providers were deliberately indifferent and grossly negligent
To his serious medical Needs relating to the fact that he had no teeth,
was not on any Special food preparation diet, and was unable to chew
his food and therefore unable to maintain a healthy diet. The gist of
his grievance was that the Dental Department would not obtain and
provide him with dentures so he could eat the same meals other in-
mates were provided.


[Foot Note # 1]

Although Mr. lyde was Taking a total of thirty-two (32) different medications,
only a partial list thereof, and the ailments they were prescribed to
Treat is provided as follows: 1.) Glyburide, 10mg, 2x daily - Diabetes; 2.) Naproxen
375mg 2x daily-Pain; 3.) Terazosin 10mg - prostrate; 4.) Clonidine 0.1mg - Bloodpressure;
5.) Glucophage 1000mg-Diabetes; 6.) Proscar 5mg - Prostrate; 7.) Ator Vastin 20mg -
Bloodpressure; 8.) Potassium CL10 mE-Bone Deterioration; 9.) Aspirin 81mg-
Heart.

Not having received a Warden/superintendent's Response to his grievance by March 28, 2018, inmate Ross filed another Confidential Offender Grievance form complaining that Defendant Rivers had not provided a timely response to his initial grievance. On April 16, 2019, Mr. Ross filed another Confidential Offender Grievance form complaining that CSP Health Services providers were deliberately indifferent and grossly negligent to his serious medical needs relating to the fact that he had no teeth, was not on any special food preparation diet, and was unable to chew his food. To date, Mr. Ross has not received a Warden/superintendent's Response to any of his grievances, or otherwise received any indication that his grievances were even filed, and the same custom/policy is practiced by CSP Health Care providers today, indicating that Defendant Rivers deliberately failed to act on the information contained in the Grievance form, as mandated DOC, SOP, despite the fact that the information clearly concerns the Health or Safety of Mr. Ross.

The existing CSP Administrative oversight practices, customs, and/or policies once again provided Medical Health Care providers at CSP the opportunity to deprive Mr. Ross proper medical care with impunity, ultimately causing him to suffer cruel and unusual punishment.

E.) On July 31, 2018 inmate Brian Lawson GDC # 991681, submitted a Confidential offender Grievance form to "Counselor" Washington complaining of a custom, and/or policy practiced by CSP Health Care providers that caused him to go without his physician prescribed Medications for periods ranging from 2 to 4 weeks-

(13)

Thereby callously placing his health and well being in
Jeopardy and Causing unnecessary pain and suffering.
   On October 30, 2018, inmate Lawson submitted another
Confidential Offender Grievance form - To "Counselor" Brown,
This time-Complaining that he had not received a Warden/
Superintendent's Response to his first Grievance and that
CSP HealthCare Providers were practicing a custom and/or
policy of refusing to issue him his physician Prescribed
Medical Supplies and again were compelling him to endure un-
necessary pain and suffering.
   On December 18, 2018 inmate Lawson submitted another
Confidential offender Grievance form - To "Counselor" ~~Brown~~
Freeman this time-complaining that he had not received
a Wardens/superintendent's Response to his first Two(2) grievances
and that CSP HealthCare providers were practicing The same
Custom and/or policy of refusing to issue him his physician
prescribed Medical Supplies and again were compelling him to en-
dure unnecessary pain and suffering.
F.) ON Dec 13, 2017 inmate William Holtzclaw GDC#1000988877,
submitted a Confidential offender Grievance FoRm to "Counselor"
Brown, complaining That his Detail, "Working in The chawhall"
was being terminated due to the fact he's in a wheel chain. He
is Assigned This detail on his "OMS" and Feels he's being discrim-
inated against because he's in a wheel chain. Mr. Holtzclaw Never
received any Reply to This Grievance. This is but yet another ex-
ample of Defendant Rivers failing to act and violating DOC SOP
for The purpose of defeating the grievance procedure.
   Mr. Holtzclaw has on several occasions filed a grievance
(14)

and has not received any Reply. Starting on 07/9/2015 Mr. Holtzclaw gave a Confidential offender Grievance form to R. Williams "Counselor," On 07/25/2017 Mr. Holtzclaw gave a Confidential offender Grievance form to "Counselor" L. Brown, on 05/25/2017. Mr. Holtzclaw gave a Confidential Offender grievance form to "Counselor" K. Finch, On 05,01, 2017 Mr. Holtzclaw gave a Confidential Grievance form to "Counselor" K. Finch, on 8/13/18 Mr. Holtzclaw gave a Confidential offender Grievance form to "Counselor" A. Washington, On 10/17/18 Mr. Holtzclaw gave a Confidential offender Grievance form to "Chief Counselor and Grievance Coordinator" C. Rivers.

All of The above Confidential grievances have Receipts. Although Mr. Holtzclaw Cant Remember the exact complaint for each date due to the fact he only has the Receipts. They Range from Medications being Not Refilled properly and Causing Mr. Holtzclaw to go for days without it, to the Shower Seats in the Handi-Cap Showers being broken and not repaired for weeks. Mr. Holtzclaw has a Civil Action Pending in federal Court right Now over The HandicAp showers, One broke while he was Taking a shower and he fell to the floor injuring himself. Maintenance had Just Claimed to have fixed the Chair. It failed.

Defendant Rivers, has still NOT INvestigated the claims he's raised Nor has Mr. Holtzclaw received a Wardens/superintendents' Response To his grievances.

25.

Plaintiff claims that Defendant Rivers' Overt activity in the per-petuation of the policy was and is intended to obstruct DOC awareness and oversight review/correction of the claimed Health-

(15)

Care misconduct and allows health Services personnel to Act with impunity and, therefore, constitutes deliberate indifference to injuries resulting therefrom. Although the present sample of example cases is relatively small, plaintiff avers that more samples/ examples dating both to prior to and after his May, 2016 incident- are pending revelation based upon receipt of verification evidence.

Having failed, with deliberate indifference, gross negligence, and in violation of State law, to exercise an affirmative duty-to enter prior inmate grievances (relating to CSP HealthCareprovider Medical misconduct) into the IGMS, as required by Department of Corrections SOP, and/or to otherwise cause an investigation into, and correction of, said medical misconduct, Defendant Rivers' overt acts were the proximate cause of the actual and permanent injuries he has suffered consequent to the Healthcare Misconduct He sets forth in the Original Complaint.

27.

Plaintiff claims that a custom, practice, and/or policy of defeating the inmate grievance process has existed and been utilized in prior grievance cases at CSP, and that Defendant Rivers' overt activity in the perpetuation of said custom, practice, and/or policy constitutes deliberate Indifference to the injuries resulting from her obstruction of that process. Accordingly, said practice, custom, and/or policy and Defendant Rivers' overt activity in the perpetuation thereof, is a proximate cause of the injuries plaintiff Suffered at the hands of CSP Health Services personnel.

28.

The Defendants are alleged to be fostering a corrupt scheme and conspiracy, a practice, custom, and/or policy of deliberate Ind-

(16)

ifference and/or gross negligence and, in the case of Defendant Rivers, the failure to exercise an affirmative duty and active concealment of known instances of deliberate indifference and/or gross negligence. These schemes and conspiracies, practices, customs, and/or policies are the result of both overt activity and failures to act on the part of Defendant Rivers.

29.

Defendant Rivers' failure to act was a substantial factor leading to the violation of plaintiff's Eighth Amendment Constitutionally protected liberty interest to be free from cruel and unusual punishment.

Defendant Cynthia Rivers is sued in her individual and official capacities, and plaintiff again invokes his right to Trial by Jury.

Wherefore, Plaintiff prays this Honorable Court will grant him the following relief:

A. Declaratory Relief
     plaintiff requests a Declaratory Judgement that:
1. Defendant Awe's actions/inactions in the May 22, 2016 through May 26, 2016 treatment of plaintiff's serious medical condition were the result of overt activity and failures to act on the part of Defendant Awe. His failure to do what was required and conduct a personal examination of plaintiff prior to accepting or rejecting the recommendation(s) of his subordinate staff, and his overt activity of personally refusing plaintiff the recommended emergency hospital care without conducting said

(17)

personal examination - which was unlawful and harmful- was a substantial factor leading to the violation of plaintiffs Eight Amendment Constitutionally protected liberty interest to be free from cruel and unusual punishment, is libel to plaintiff for injuries as a result therefrom.

2. That an unconstitutional custom, practice, and/or policy, employed to defeating the inmate grievance process, exists at Coastal State prison, and that Defendant Rivers has been an active party thereto, advancing said custom, practice, and/or policy;

3. Defendant Rivers' actions/inactions with regard to her overt activity in the perpetuation of the afore stated un- Constitutional custom, practice, and/or policy was and is in- tended to cause CSP inmates actual and permenant injury and obstruct DOC awareness and oversight review/correction of the claimed Health Care misconduct, thereby allowing CSP health Services personnel to act with impunity.

4. That said actions/inactions consitutes deliberate in- difference to injuries resulting therefrom.

5. That the unconstitutional custom, practice, and/or policy employed to defeat the inmate grievance process renders said grievance process ineffectual and fruitless;

6. That Defendant Rivers Violated plaintiffs first Amendment Constitutional rights to petition the Court for redress of his grievances with deliberate intent to cause plaintiff actual and permanent injury when she failed to properly enter plaintiffs grievances into the inmate Grievance Management System, and investigate the claims in accordance to Department

(18)

of Corrections Standard Operating Procedure.

7. Defendant Rivers' actions/inactions were the result of overt activity and failures to act on the part of Defendant Rivers. Her failure to do what was required and properly enter and process Confidential Inmate Grievance forms, and her overt activity of personally interfering with the inmate grievance procedure with deliberate intent to cause actual injury - which was unlawful and harmful - was a substantial factor leading to the violation of plaintiffs' Eighth Amendment Constitutionally protected Liberty interest to be free from Cruel and Unusual punishment, and therefore is libel to plaintiff for injuries suffered as a result therefrom.

B. Injunctive Relief

Plaintiff requests an Injunctive Order de-certifying the Georgia Department of Corrections Inmate Grievance System as an Administrative remedy.

C. Compensatory Damages

Plaintiff requests Compensatory Damages against Defendant Atue in the Amount of (1) Million dollars ($1,000,000.°°) individually and severely from any damages awarded from the other-named defendants;

Plaintiff requests Compensatory Damages against

Defendant Rivers in the amount of ONE (1) million dollars ($1,000,000.00) individually and severly from any damages awarded from the other named Defendants;

D. Nominal Damages

Plaintiff requests Nominal Damages against Defendant Awe in the amount awarded by the Jury;

Plaintiff requests Nominal Damages against Defendant Rivers in the Amount awarded by the Jury; and

E. Punitive Damages

Plaintiff requests Punitive Damages against Defendant Awe in the Amount of Two (2) million Dollars ($2,000,000.00) individually and severly from Any damages awarded from the other named Defendants.

Plaintiff requests Punitive Damages against Defendant Rivers in the Amount of (2) Two Million Dollars ($2,000,000.00) individually and severly from any damages awarded from the other named Defendants.

Respectfully Submitted this 22nd day of July, 2019.

100208951 N-A
Coastal State Prison
P.O. Box 7150
Garden City, GA. 31418

Cager A. Maleeah
Plaintiff, Pro SE

(20)

Certificate of Service.

This is to Certify that on this date shown below, I have submitted and Served a Copy of the foregoing Statements by depositing same in the U.S. Mail postage prepaid with the Correct address.

This 22 day of July, 2019

Cager A. McLeeah
1001208951 N-A
Coastal STATE prison
Garden City, GA. 31418

TO: Mr. Paul Jay Pontrelli
Department of LAW
40 Capitol Square S.W.
Atlanta, GA.  30334-1300

TO: United States District Court
Southern District of Georgia
P.O. Box 8286
Savannah, GA. 31412

(21)

CAger A. Maleeah
10012089S1  N-A
Coastal State Prison
P.o.Box 7150
Garden City, GA.
31418

United States District Court
Southern District of Georgia
P. O. Box 8286
SAVANNAH GA.
31412

U.S. Marshals Service

Cleared

3141286286 B005